Leroy **MOBLEY**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 23380.

United States Court of Appeals
Fifth Circuit.

June 28, 1967.

Thomas M. Jackson, Macon, Ga., C. B. King, Albany, Ga., for appellant.

Floyd M. Buford, U. S. Atty., Walker P. Johnson, Jr., Asst. U. S. Atty., Macon, Ga., for appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant, Leroy Mobley, a Negro, was indicted, tried and convicted of robbery, theft, assault and murder in violation of 18 U.S.C. § 2113. On March 8, 1965, at about 10:00 p. m., two Negro males kidnapped Thomas E. Woodruff, president of the Exchange Bank of Unadilla, Georgia, at gunpoint, from the driveway of his home. They drove him to the bank, ordering him to open the vault, from which they robbed the bank of $3,778. When they ordered Mr. Woodruff to open the inner portion of the vault, he told them that he could not do so because the time lock would not open until the next morning, whereupon he was severely beaten and finally shot by the robbers, resulting in his death three days later.

Appellant and one Andrew Oliver were charged with the crime and Oliver entered a plea of guilty but has not yet been sentenced. Oliver testified at the trial, admitting his participation in the crime and implicating appellant as his partner in the offense as the one who beat and shot Mr. Woodruff. The jury directed imposition of the death sentence, which was accordingly imposed by the court. Prior to the trial, appellant moved to dismiss the indictment and to challenge the array of the petit jury on the ground that Negroes were systematically excluded from serving as jurors, by reason of their race or color, in the Columbus Division from which the grand jury was drawn that indicted him, and in the Americus Division from which the petit jury was drawn.

In aid of his motion to dismiss, appellant's counsel requested that the court permit him to inspect the written questionnaires, kept by the clerk of court, to determine the race of jurors on the jury lists of the Columbus Division from which the grand jury was drawn that indicted him and the Americus Division from which the array of the petit jury for his case was drawn. In his motion appellant alleged that because of his poverty he was unable to hire investigators to determine the race of those persons on the Columbus and Americus jury lists, and that the information contained in the questionnaires was pertinent to the issue of systematic racial exclusion and should be provided to him. The request to examine the questionnaires was denied by the district judge who stated later in written reasons that many of the questionnaires did not show the race of the jurors; that the answers given by the jurors were confidential; and that they were not necessary or appropriate to this inquiry since the court was satisfied from other evidence submitted by the testimony of the official jury selectors, jury commissioner, clerk of court and deputy clerks, that the grand jury and petit jury were fairly constituted. The court said that for a number of years names of Negroes have appeared on grand and petit jury lists of the Columbus and Americus Divisions.

The question for decision is whether the district court erred in refusing to allow appellant's counsel to examine the

questionnaires of jurors on the Columbus and Americus lists and whether the district judge erred in denying the motions to dismiss the indictment and to challenge the array of the petit jurors.

In connection with the motions the court held a hearing and found that there were 4 Negroes on the 23-member grand jury (17% of the jury) which indicted appellant; on the petit jury panel of 100 names upon which appellant was tried, there were 15 Negroes; and the petit jury which tried appellant, consisting of 12 regular jurors and 2 alternates, contained 1 Negro as a regular juror and 1 Negro as an alternate.

The court also found: "That according to the 1960 census the total adult white population in the Columbus Division is 88,780, and the total adult Negro population is 38,129, and that 60.2% of the white adult population have at least an elementary school education and 31.4% of the Negro adult population have at least an elementary school education.

"That in applying these percentages 53,445 white persons and 11,971 Negroes would be presumed to be qualified for jury duty, which would mean that approximately 82% of those available for jury duty in the Columbus Division would be white persons and approximately 18% of those available would be Negroes.

\* \* \* \* \* \*

"That according to the most recent United States census the adult white population in the counties comprising the Americus Division was 34,321 and the adult Negro population was 26,299, and that among the adult white population in the division 58.7% have at least an elementary school education and 20.0% of the Negro adult population have at least an elementary school education.

"That in applying these percentages 20,146 white persons and 5,259 Negroes would be presumed to be qualified for jury duty, which would mean that of the jury pool so available slightly more than 20% would be members of the Negro race and slightly less than 80% would be members of the white race."

There is no finding, however, on the important question of the percentage of white and Negro jurors on the Columbus and Americus lists, there being no evidence on which to predicate such a finding.

In his written reasons the trial judge described the method of selection of jurors for the Columbus and Americus Divisions by the jury commissioner of the district aided by the clerk and deputy clerk of court. The last revision of the jury lists was completed in 1959 when, by use of the familiar "key man" system, the 1953 list was supplemented and revised by the clerk of court and his deputy who personally and by letter contacted church groups, educators, lawyers, other professional people, clerks of courts, civic clubs, women's organizations, law enforcement officials and any other source deemed likely to provide names of qualified persons. The compilers thus believed that they were acting in good faith and were obtaining a representative cross section of citizens of the community for jury service.

Thus the district court held that appellant's allegations of systematic exclusion of jurors because of race were unsupported and inaccurate.

Appellant contends that he has been deprived of his Fifth Amendment rights of due process and equal protection of the laws by being denied access to the jury questionnaires where he would have secured readily available information on which to determine the race of members of the grand jury and petit jury venires.

█ It is well settled that Negroes may not be systematically and arbitrarily excluded from the jury venires from which the grand jury is selected which has indicted a Negro defendant and that a conviction cannot stand if the petit jury is drawn from a list similarly composed. In the recent case of Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), decided January 23, 1967, the Supreme Court said that "For over four score years it has been federal statutory law, 18 Stat. 336, 8 U.S.C. § 44 (1875); 18 U.S.C. § 243 (1948), and

the law of this Court as applied to the States through the Equal Protection Clause of the Fourteenth Amendment, that a conviction cannot stand if it is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded by reason of their race. Strauder v. [State of] West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); see also Pierre v. State of Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939)."

In Cobb v. Balkcom, 5 Cir., 1964, 339 F.2d 95, this Court held "that a Negro defendant in a criminal case is entitled to indictment by a grand jury and trial before a traverse jury from which Negroes have not been arbitrarily and systematically excluded. A conviction cannot stand where such is established for it constitutes a denial of due process and of the equal protection of the laws."

 The burden of proof is on the person attacking selection procedure to show "the existence of purposeful discrimination" by the exclusion of Negroes on account of race from jury participation. Whitus v. State of Georgia, supra; Fay v. People of State of New York, 332 U.S. 261, 285, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043 (1947). Purposeful discrimination may not be assumed or merely asserted, it must be proven. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). "When Negro representation on venire lists is not extremely disproportionate to the Negro population in the parish [county],

the burden may be a heavy one." Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698, 712. However, juries must be drawn from a fair cross section of the community. Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Thiel v. Southern Pac. Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Scott v. Walker, 5 Cir., 1966, 358 F.2d 561, 564. The jury must, therefore, be "drawn from a pool of persons broadly representative of the community", Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34, 45, for "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." Smith v. State of Texas, supra.[1]

 In compiling jury lists, both the need for competency and for a fair cross section of the community are important elements but the desire for competency must not be pursued to the extent that it prevents a fair cross section and any attempt to gain competent jurors that would result in a less representative cross section than one drawn from the statutorily qualified pool would destroy the right to serve on juries which Congress intended to confer (i. e., by its enactment of a uniform set of jury qualifications, 28 U.S.C. § 1861), and would destroy the broad-based cross section Congress has designated for federal juries. Rabinowitz v. United States, supra.[2] We have held that "very de-

---

1. See Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34; Jackson v. United States, 5 Cir., 1966, 366 F.2d 34; Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1; Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698; Davis v. Davis, 5 Cir., 1966, 361 F.2d 770; Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13; and Scott v. Walker, 5 Cir., 1966, 358 F.2d 561.

2. The *Rabinowitz* case originated in the United States District Court for the Middle District of Georgia, as did the present case. The district court denied the motions to dismiss the indictment and to challenge the array of the petit jury in January 1966, followed by a written opin-

ion on February 4, 1966 by the trial judge amplifying his reasons for denying the motions. *Rabinowitz* was not decided until later in the same year by the Fifth Circuit, i. e., on July 20, 1966.

In the present case, also from the Middle District of Georgia, those in charge of jury selection were the Jury Commissioner, Mr. William P. Simmons, and the Clerk of Court, Mr. John P. Cowart, both of whom testified in the hearing on the motions. Mr. Simmons and Mr. Cowart were also the jury selectors in the *Rabinowitz* case, and they likewise testified there as to the method and procedure of preparing the jury venires.

cided variations in proportions of Negroes and white on jury lists from racial proportions in the population, which variations are not explained and are long continued, furnish sufficient evidence of systematic exclusion of Negroes from jury service." United States ex rel. Seals v. Wiman, 5 Cir., 1962, 304 F.2d 53, 67. However, the Constitution does not require an exact proportion between the percentage of Negroes in the population and those on the jury lists, nor does it require that any particular panel of jurors in a criminal trial include members of the race of the accused person. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945). There is, therefore, an affirmative duty imposed by the Constitution and laws of the United States upon the jury selection officials—jury commissioner and clerk of court—to know the availability of potentially qualified persons within significant elements of the community, including those which have been the object of state discrimination, to develop and use a system that will result in a fair cross section of qualified persons in the community being placed on the jury rolls and to follow a procedure which will not operate to discriminate in the selection of jurors on racial grounds. Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34, 57, 73 (concurring opinion); Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1; Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953).[3]

There seems to be no controversy as to the constitutional and statutory principles—the question involved is the application of these principles to the facts disclosed in the record. Cf. Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). That is the problem here, and the difficulty is that we do not have all the facts which appellant alleges are necessary to a decision in this case—facts which he asserts would assist us in deciding whether there has been a violation of his constitutional rights so as to require setting aside of the judgment of conviction.

■ Appellant states that the census figures of the counties composing the Columbus Division show a white population of 70% thereof and a Negro population of 30% and that the counties which compose the Americus Division have a white population of 57% and a Negro population of 43%. There was a total of 1,481 names in the Columbus jury box from which the grand jury was selected and approximately 700 names in the Americus jury box from which the petit jury array was selected. The ratio of white to Negro jurors on the Columbus and Americus Division lists is not known for the record is silent on the subject. It is precisely this information which the appellant seeks to present to the court in order to support his contention that there was a systematic exclusion of persons of his race from these lists. "The focus of the law is on the list from which the jury is drawn and not on the composition of a particular jury or grand jury." Rabinowitz v. United States, 366 F.2d at 59.

We look, therefore, to the source of the grand and petit juries in this case. With complete information about the race of those on the jury lists, appellant states he would prove his contention that the "key man" system did not work properly or lawfully in the selection of jurors on the Columbus and Americus Division lists; that only white people were contacted as "key men" by the jury commissioner, the clerk and deputy clerks; and that he should have been given access to the jury questionnaires so that the exact percentage of Negro and white jurors in each of the two boxes could be established which he asserts would show that the proportion of Negroes on the jury lists is so sub-

3. For a thorough discussion of this problem see Martin, The Fifth Circuit and Jury Selection Cases: The Negro Defendant and His Peerless Jury, 3 Houston L.Rev. 448 (1966).

stantially below the percentage of Negroes actually residing in the counties which compose the two divisions of the Georgia Middle District as to justify a holding of systematic exclusion of Negroes on account of race.

Though we held in Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34, that the "key man" system of juror selection, coupled with an impermissible departure from the federal statutory scheme, produced a "poisoned" basic jury list, and that "the fruits of that list were also infected" (Id. at 60), we did not thus declare the "key man" selection system illegal as such. See Scales v. United States, 367 U.S. 203, 259, 81 S. Ct. 1469, 6 L.Ed.2d 782 (1961). We felt that the facts in *Rabinowitz* warranted a holding that the jury list was improperly constituted because the jury selectors applied "wrong standards" and used "grossly inadequate sources."

■ That is the inquiry here, and we must have all the facts in order to make an intelligent determination. We believe the district judge erred, therefore, in not permitting inspection of the questionnaires. This evidence, designed to show the ratio of Negroes to white on the jury lists, is pertinent to an inquiry into the question of whether there has been a systematic exclusion of Negroes because of race. While this proof is not necessarily controlling, it is, nevertheless, an important factor of substantial value and should be considered by the court in connection with the other evidence pertaining to the method of selection of persons on the jury lists. Confidentiality of the jury questionnaires must accordingly yield to this major consideration. The court could have provided appropriate safeguards to the confidentiality of the questionnaires by requiring that nothing be taken from them except the declaration of race. The trial judge permitted appellant's counsel to inspect the questionnaires of the 100 jurors who composed the petit jury array and in each instance the race of the juror was listed on the questionnaires. Therefore, it is reasonable to believe that the jury questionnaires contain information relative to race, which is readily available for the court's consideration.

We deem the evidence of record as to the method of selection of jurors on the Columbus and Americus lists insufficient for a final determination of the serious issue with which we are confronted. Certainly it is pertinent to a resolution of the charge of racial exclusion of jurors that we know the percentage of Negroes and white persons in the pool of jurors contained in the two boxes. Though the method requested by appellant is not the only way this could be determined, it is an inexpensive, expeditious way of handling the matter, especially suited to the needs of a pauper appellant.

■ Under the circumstances, it is not necessary or proper that we reverse the conviction. We find that the present record is incomplete and that the information which appellant's counsel sought from the jury questionnaires as to the race of the jurors who compose the Columbus and Americus venires should have been presented to and considered by the district court in connection with the motions to dismiss the indictment and to challenge the array of the petit jury. Accordingly, we remand this case with directions to the district judge to permit an inspection by appellant's counsel of the jury questionnaires pertaining to the Columbus and Americus boxes. A further supplemental hearing should be held by the court on the question of systematic exclusion, and in order that the record may be complete, we direct that all evidence heretofore taken on the subject be considered together with such additional evidence as both parties may present and as may be found relevant by the trial court under standards articulated and announced in our recent en banc decisions on the subject.[4] In view of the consti-

4. See all of the cases listed under footnote 1.

774

tutional importance of this matter, the hearing to be held ought to be as broad as that permitted in a post-conviction Section 2255 proceeding (28 U.S.C. § 2255). It is good orderly administration to hold the hearing now because if it is not held now, it must be held later. The court's decision on remand should be supported by appropriate findings of fact and conclusions of law. The stay of execution will remain until determination of the matter.

Reversed as to the denial of the motions to dismiss the indictment and to challenge the array of the petit jury only, and remanded for further hearing in accordance with this opinion.