54 N.J. 85 (1969)
253 A.2d 474
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HERMAN ROCHESTER, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued March 17, 1969.
Decided May 19, 1969.
*87 Mr. Frederick L. Bernstein argued the cause for appellant.
Mr. Harold N. Springstead, Assistant Prosecutor, argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
PER CURIAM.
We affirm essentially for the reasons expressed by Judge Botter in the Law Division. 105 N.J. Super. 529 (1967).
Our State Constitution contains suitable provisions for indictment by grand jury (Art. I, par. 8) and for trial by petit jury. Art. I, par. 9. And our State statutes (N.J.S. *88 2A:68-1 et seq.), along with our court rules and administrative directives, contain suitable provisions for the selection of jurors, for their qualifications and exemptions and on related matters. No one may be disqualified from service as a grand or petit juror because of "race, color, creed, national origin, or ancestry". N.J.S. 2A:72-7; Bullock v. State, 65 N.J.L. 557, 562-564 (E. & A. 1900). The methods of selection must be so designed as to insure that juries are impartially drawn from community cross-sections. Thiel v. Southern P. Co., 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181, 1184 (1946). Though grand juries, as well as petit juries, must be representative of the community (Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L.Ed. 84, 86 (1940); State v. Stewart, 2 N.J. Super. 15, 26 (App. Div. 1949)), their functions are different and they have heretofore been accompanied by fair measures of selectivity. See State v. Forer, 104 N.J. Super. 481, 492-495 (Law Div. 1969); Morse, "A Survey of The Grand Jury System," 10 Ore. L. Rev. 101, 308 (1931); Note, "Some Aspects of the California Grand Jury System," 8 Stan. L. Rev. 631, 638 (1956).
Unlike the petit jury which is selected to hear and determine the particular case at hand, the grand jury is selected to inquire into the commission of all crimes of varying and oftentimes complex nature and to return indictments where appropriate. In addition it has the important function of conducting general investigations bearing on official conduct and of returning presentments on matters of public interest even though no indictable offenses are found. In re Addonizio, 53 N.J. 107, 124 (1968); In re Presentment by Camden County Grand Jury, 34 N.J. 378, 388 (1961); In re Camden County Grand Jury, 10 N.J. 23, 66 (1952). Because of the nature of the grand jury's responsibilities, its members are called upon to devote much more extended periods of time than are members of petit juries. It is vital that they possess and exercise sufficient measures of independence from outside forces including the traditional enforcement and prosecutorial authorities. During the nineteen *89 twenties and thirties, Wayne L. Morse, then professor of law at the University of Oregon, conducted a national study which, inter alia, compared grand juries chosen wholly at random with those chosen with some selectivity; he understandably found that "the exercise of discretion in the selection of grand jurors results in higher caliber jurors who, in turn, tend to function more independently", Morse, supra, 10 Ore. L. Rev., at 308; see also Note, supra, 8 Stan. L. Rev., at 638.
Neither the State nor the federal constitution prescribes any specific method of selection nor does either constitution prescribe that grand and petit juries must be selected in identical fashion. Though arbitrary exclusions of identifiable groups, whether designedly or neglectfully, may not be tolerated, there is no constitutional barrier to a mode of selection which, though it involves the exercise of discretion, is nonetheless reasonably designed to obtain competent jurors from a cross-section of the community. Cf. Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 86 L.Ed. 680, 707 (1942). In determining competency, the particular nature of the functions to be discharged, e.g., grand jury in contrast to petit jury, would appear to be a highly relevant item.
In State v. Forer, supra, 104 N.J. Super. 481, the jury commissioners had exercised their customary discretion in selecting grand jurors. They had conscientiously tried to obtain those "best suited to serve in such capacity"; they had exercised their best judgment in selecting persons who were "intelligent, sensible, honest, impartial and courageous"; they had not chosen persons they believed to be "politically active, easily influenced or of doubtful integrity"; and they had refrained from excluding anyone due to "race, color, creed, national origin, or ancestry". 104 N.J. Super., at 493. The defendants moved to dismiss the grand jury's indictment, contending that the jury commissioners could not exercise any discretion in formulating the list of grand jurors but were obliged to select all jurors, both grand and *90 petit, at random from the master list after it had been screened only for statutory qualifications and exemptions. Their motion was denied in an opinion which stressed the need for intelligent and independent grand jurors and concluded with the thought that jury commissioners should have "the power to choose qualified jurors even though some loss results in the cross-section character of the jury composition". 104 N.J. Super., at 494. Such incidental loss would not present any constitutional deficiency for there is no requirement that jurors be selected from an absolute cross-section of the total population without regard to qualifications; to the contrary, statutory disqualifications and exemptions have been consistently upheld though they obviously served to reduce the cross-section character of the jury composition. See Rawlins v. Georgia, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); United States v. Valentine, 288 F. Supp. 957 (D. Puerto Rico 1968).
We of course recognize that the exercise of discretion by jury commissioners entails some dangers and that, as State v. Forer, supra, pointed out, courts must be ever vigilant to stop discriminatory practices. 104 N.J. Super., at 494. In State v. Stewart, supra, the court, after rejecting an attack on the manner in which the Union County Grand Jury had been selected, explicitly cautioned jury commissioners that they must see to it that juries are selected so as to be representative of the community, and that they should take corrective action whenever it appeared that large segments of the qualified population were for any reason not being called for jury service. 2 N.J. Super., at 26. In the matter at hand, the charge was made that the Bergen County Grand Jury pool had not, for many years, proportionately or fairly reflected the racial composition of the community. Judge Botter's opinion not only found that no arbitrary or systematic exclusion of Negroes and no constitutional infirmity in the mode of selection had been shown (Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d *91 759, 766 (1965)), but also referred to affirmative steps which have been taken to insure their greater representation. Cf. Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966), certiorari denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967); Mack v. Walker, 372 F.2d 170 (5th Cir. 1966).
Although its terms are not binding on the States, it is appropriate that we take cognizance of and give weight to the recently enacted federal Jury Selection and Service Act of 1968. 28 U.S.C.A. § 1861 et seq. (Supp. 1969). It was preceded by considerable study on the part of a committee of the Judicial Conference of the United States (42 F.R.D. 353 (1967)) and by extensive hearings before a subcommittee of the Senate Judiciary Committee. Hearings Before the Subcomm. on Improvements in Judicial Machinery, 90th Cong., 1st Sess. (1967). It eliminates the so-called key man system with its inevitable discretionary incidents and provides for the random selection of all jurors from voter lists. 28 U.S.C.A. § 1863 (Supp. 1969); see United States v. Agueci, 310 F.2d 817, 833, 99 A.L.R.2d 478 (2d Cir. 1962), certiorari denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 12 (1963). It directs that jurors shall be considered qualified so long as they meet the prescribed statutory requirements and it draws no distinctions between grand and petit juries. 28 U.S.C.A. § 1865 (Supp. 1969). It rests on objective qualification criteria in the belief that this will best serve to obviate unintentional as well as intentional discrimination (cf. Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966)), and to insure that the jury is truly selected from "a fair cross section of the community". 28 U.S.C.A. § 1861 (Supp. 1969); 1968 U.S. Code Cong. and Adm. News pp. 1792-1797.
The committee of the Judicial Conference of the United States voiced its conviction that the random selection of jurors will not impair the competency and effectiveness of federal juries. It noted that jurors "still will be screened by the use of voting lists, by the statutory qualifications, by the court's power to exclude unqualified jurors under specific *92 circumstances", and in petit juries "by the use of peremptory and cause challenges". 42 F.R.D. at 363. See 28 U.S.C.A. § 1866 (Supp. 1969). During the Senate hearings many distinguished witnesses, including governmental officials, judges, lawyers and law professors, expressed views along the same lines and strongly supported random selections of grand as well as petit jurors. In the light of all of the foregoing, our Chief Justice recently concluded that, on an experimental basis, grand jurors should be selected in our State at random, as petit jurors have been for some time. At a meeting of the Assignment Judges held on March 7, 1969, he directed that "in the future the grand jury lists be selected in the same manner and from the same pool of names as petit jurors". He also directed that questionnaires "be sent to those on the voter registration lists (the only source of names to be used) by selecting names at random"; that where necessary to obtain a reasonable cross-section the Assignment Judge may "direct the selection at random of an above-average number of names from certain areas"; and that grand juries should no longer "be selected specially". The Assignment Judges have been requested to advise the Administrative Director from time to time as to the results of their procedures and the experiment will be carefully watched. It is fervently to be hoped that it will achieve its high democratic goals while fully retaining, and perhaps even strengthening, the just and effective aspects of our historic grand jury system. See In re Camden County Grand Jury, supra, 10 N.J. 23; In re Presentment by Camden County Grand Jury, supra, 34 N.J. 378; In re Addonizio, supra, 53 N.J. 107; see also Younger, The People's Panel (1963); Scigliano, "The Grand Jury, The Information, and The Judicial Inquiry," 38 Ore. L. Rev. 303 (1959).
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For reversal  None.