573 A.2d 944

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. CIBA–GEI-GY CORPORATION, TOMS RIVER CHEMICAL CORPORA-TION, WILLIAM P. BOBSEIN AND JAMES A. MCPHERSON, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 6, 1990—Decided April 9, 1990.

Before Judges PRESSLER, LANDAU and LOWENGRUB.

*Barbara F. Forte*, Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo*, Attorney General, attorneys, *Barbara F. Forte* of counsel and on the brief).

*Henry F. Furst* argued the cause for the respondents (*Furst & Waldman and Brown, Brown & Kologi,* attorneys for respondent Bobsein, *Henry F. Furst* of counsel and on the brief).

*Wilbert & Montenegro,* attorneys for respondent McPherson (*Michael E. Wilbert* joined in brief filed by respondent Bobsein).

*Lowenstein Sandler Kohl Fisher & Boylan, Cravath Swaine & Moore, Jeffrey Benjamin,* Corporate Counsel, *Finnin & Roettger,* attorneys for respondent Ciba–Geigy (*Matthew P. Boylan* joined in brief filed by respondent Bobsein).

The opinion of the court was delivered by

LOWENGRUB, J.S.C., t/a.

The State of New Jersey, Division of Criminal Justice, appeals, on leave granted, from an order of the Law Division which authorizes the mailing of a questionnaire on the court's stationery to each of the 575 members of State Grand Juries 171–195, requesting recipients to identify their race and ethnic background. Defendants reason they require the data as an intermediate step in gathering facts necessary to prove their entitlement to an evidentiary hearing to challenge the selection process of state grand juries. We affirm.

The indictment against defendants by State Grand Jury panel 195 charged them with unlawful disposal of hazardous substance into the environment. On March 11, 1988, defendants filed a notice of motion for an order, *inter alia,* dismissing the indictment, staying the proceedings and granting discovery concerning the state grand jury selection system. On November 1, 1988 an order was entered permitting limited initial discovery with regard to defendants' proposed grand jury challenge subject to certain terms and conditions. However, the discovery order prohibited defendants from contacting "any past, present or anticipated individuals questioned or to be

questioned regarding or summoned for jury service." By motion dated April 28, 1989 defendants sought to expand the prior order to permit "limited direct or indirect contact with individuals who have served or been called for state grand jury service." Counsel's certification filed with the motion stated that in support of defendants' challenge to the composition of the state grand jury they have "focused upon the possible under-representation of two cognizable groups from many panels, blacks and Hispanics." That certification was supplemented by a certification of Dr. John Lamberth [1] who prepared a preliminary analysis of the race and ethnic background of State Grand Juries 171–195 from information on hand. The results of the analysis produced by Dr. Lamberth were asserted to raise a reasonable suspicion that there is an underrepresentation of blacks and Hispanics in the jury pools. The statistical analysis Dr. Lamberth used was the geographic inference method. [2] Of the 575 individuals constituting the 21 state grand juries 450 or 78.3% of the total could be classified as to race and ethnic

---

[1]John Lamberth, Ph.D. is a faculty member of Temple University in the Department of Psychology, a member of the American Psychological Association, the Society for Experimental Research in Social Psychology, a licensed psychologist and has been qualified as an expert in statistics, survey methodology, and social psychology by state and federal courts. He is an author of scholarly works in psychology and he has served as a consultant to the U.S. Army in survey techniques and as a consultant on a study funded by the Law Enforcement Assistance Administration of the United States Department of Justice.

[2]As explained in *State v. Ramseur*, 106 *N.J.* 123, 214, n. 41, 524 *A.*2d 188 (1987):

The geographic inference method is a procedure in which the race of a particular juror is inferred from the ... [area] in which the juror lives. The ... [area] was broken up into tracts. The racial makeup of the tract is determined from census data. Each name on the racially neutral source list is identified with a particular tract in the area. If the tract in which the juror resides is classified as 90–100% black, the race of the juror is inferred to be black. If the tract in which the juror resides is classified as 0–10% black, the juror is inferred to be white. Jurors living in tracts classified as 11–89% black were not counted.

background using the method described [3].  Of those classified, 97.56% were white and 2.44% were black.  Dr. Lamberth asserted that the State of New Jersey has a population of individuals 18–74 years old that is 11.37% black.  The disparity between the black population and the percentage of black people serving on the State Grand Juries yielded an absolute disparity of 8.93% and a comparative disparity of 78.54%.  The absolute disparity is the difference arrived at by subtracting the percentage of the number of black people on State Grand Juries, 2.44%, from the black population of the State, 11.37%.  The comparative disparity is calculated by dividing the absolute disparity, 8.93%, by the black population of the State, 11.37%.

Of the 575 people serving on State Grand Juries 171–195, 17 or 2.96% were Hispanic.  Counsel stated that comparing the Hispanic population of the State to the percentage of Hispanic people serving on State Grand Juries yielded an absolute disparity of 2.99% and a comparative disparity of 50.25%.  Therefore, counsel postulates that if the data used is accurate there is a *prima facia* case of discrimination in the selection of state grand juries.  Defendants, however, claim to require accurate information of the race and ethnic background of the jurors who served on the 25 State Grand Juries, Nos. 171–195 to authenticate the accuracy of their preliminary findings.  Based on the results found by Dr. Lamberth, the motion judge found "it is extremely unlikely that … a full challenge could be presented" without information as to the actual race and ethnic background of the state grand jurors.  He found there was reasonable cause to believe there may be a defect in the procedure leading to the impaneling of the grand jury, *See, Rojas v. State*, 288 *So.*2d 234 (Sup.Ct.Fla.1973), and that defen-

---

[3]The difference between the 575 State Grand Jury panelists and the 450 individuals classified under the geographic inference method represents 115 individuals who live in 11–89% integrated tracts and 10 individuals whose addresses were unclassifiable.

dants had established a sufficient predicate to entitle them to the data they requested.

Judge Lenox then issued an order supplementing the prior discovery order and permitted a questionnaire on his stationery to be mailed to the 575 people who constituted State Grand Juries 171–195. The respondent was to return the questionnaire to the court in the envelope provided. The questionnaire consists of two questions:

1. What is your race?
____ White ____ Black ____ Other
2. Are you Hispanic?
____ Yes ____ No

We have stayed the mailing of the questionnaire pending our determination of this appeal.

Defendants claim they have a right to information concerning the race and ethnic background of each of the 575 grand jurors predicated upon both federal and state constitutional precepts, *viz.*, that the grand jurors were selected in a manner that is not violative of defendants' due process and equal protection rights, and that the grand jurors were drawn impartially from cross-sections of the community. *State v. Ramseur*, 106 *N.J.* 123, 214, 524 *A.*2d 188 (1987); *State v. Rochester*, 54 *N.J.* 85, 88, 253 *A.*2d 474 (1969), citing 28 *U.S.C.A.* § 1861; *State v. Porro*, 158 *N.J.Super.* 269, 272, 385 *A.*2d 1258 (App.Div.1978). Defendants further assert that unless they are provided with information which identifies the race and ethnic background of the grand jury pool, they cannot ultimately validate their preliminary belief that grand jurors were not selected consistently with federal and state constitutional standards.

On the other hand the State argues that before there may be contact with any of the persons who served as grand jurors, defendants must establish a likelihood that bias in the selection process exists. Further, it asserts that defendants' claim must be predicated on a "showing of good cause to believe that there is a legally-significant selection defect and a particularized need which outweighs the grand jurors' privacy interest and the

interest of the State and the public regarding the integrity of the grand jury system."

We reject the state's contention that defendants are entitled to the discovery they seek only if they meet the good cause standard prescribed by our courts for discovery of grand jury materials beyond that authorized by *R.* 3:13–3(a)(3). *See, State v. Doliner,* 96 *N.J.* 236, 246, 475 *A.*2d 552 (1984), holding that where a party seeks disclosure of grand jury proceedings "the standard we adopt is a strong showing of particularized need that outweighs the interest in grand jury secrecy." *See also, State v. CPS Chemical Co., Inc.,* 198 *N.J.Super.* 236, 486 *A.*2d 944 (App.Div.1985). We so conclude because the information here sought is not properly characterized as a part of grand jury proceedings. It is clear that defendants are not inquiring into why they were indicted by the grand jury; they want to know the composition of the grand jury which indicted them. They are not inquiring into the deliberative processes of the grand jury, therefore, the information of the jurors' race and ethnic background will not come from the grand jury as a deliberative body. It will come from the individual jurors. Suffice it to say the inquiry does not compel a proscribed intrusion into the mind of the juror. Therefore, we find the *Doliner* rule is not applicable to this motion. The focus of the information defendants here seek is the pertinent ethnic and racial background of the grand jurors, not what the jurors heard or considered. The cases cited by the State do not address the present concern of the defendants and we find them to be inapposite to the issue before us.

The State cites *R.* 1:16–1 for authority to support its thesis that the court below erroneously ordered the questionnaires to be mailed. However, the clear language of the rule proscribes the interrogation of any grand or petit juror "with respect to any matter relating to the case." It is evident that defendants do not seek to question or examine any of the grand

jurors concerning the case before them which resulted in the indictment of defendants.

Neither counsel nor we have found a case in this jurisdiction which directly addresses the issue of the quantum of proof necessary to permit juror contact regarding the racial and ethnic composition of the members of state grand jury panels. However, a reference to federal statutory and case law is instructive to a resolution of the issue before us.

In the federal system the requested information as to the race and ethnic background of the individuals comprising the grand jury pools is furnished in the Federal Juror Qualification Questionnaires. In the section captioned "Race" [4] the prospective juror is requested to:

> Fill in the circle completely which best describes your race. See note on reverse side to assist in ensuring that all people are represented on juries. Please indicate which of the following applies to you. Nothing disclosed will affect your selection for jury service.

A)    O Black        O Asian        O Other
       O White        O American Indian
B)    Are you Hispanic?        O Yes        O No

The difference between the disclosure of information as to race and ethnicity as included in the completed juror questionnaires considered by the federal courts and the request of defendants here to have special questionnaires sent to the members of grand jury panels 171–195 is a matter of form

---

[4]The following explanation appears in the instructions to aid in completing the questionnaires:

> RACE. Federal law requires you as a prospective juror to indicate your race. The answer is required solely to avoid discrimination in juror selection and has absolutely no bearing on qualifications for jury service. By answering this question you help the federal court clerk check and observe the juror selection process so that discrimination cannot occur. In this way, the federal court can fulfill the policy of the United States which is to provide jurors who are randomly selected from a fair cross-section of the community.

rather than substance. The procedure authorized by Judge Lenox for transmittal upon his official stationery requests essentially the same information except that the request would be made after, rather than before, the grand jury service.

The Jury Selection and Service Act of 1968, 28 *U.S.C.A.* § 1861 *et seq.*, recognized and given weight by our Supreme Court in *State v. Rochester, supra* at 91, allows discovery of designated grand jury records by parties to a suit challenging compliance with the jury selection procedures by providing that:

[t]he content of records or papers used by the jury commission, or clerk, in connection with the jury selection process shall not be disclosed, except ... as may be necessary in the preparation or presentation of a motion [challenging compliance with selection procedures under § 1867(a)] under ... this section ... The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.... [28 *U.S.C.A.* § 1867(f)]

The declared policy of Congress is that grand and petit juries are to be "selected at random from a fair cross-section of the community ...". Jury Selection and Service Act of 1968, 28 *U.S.C.A.* § 1861. There is also authority in this State which compels a similar right to have jurors drawn from pools that represent a "fair cross-section of the community." *Ramseur*, 106 *N.J.* at 215, 524 *A.*2d 188.

Under federal law the right of a defendant to inspect jury lists is to be granted without reference to a requirement that defendant establish a *prima facie* case of a defect in the jury selection process. *Government of Canal Zone v. Davis*, 592 *F.*2d 887, 889 (5th Cir.1979). It is only after an inspection of the records as allowed by § 1867(f) that a defendant is able to make an informed decision as to whether he is in a position to challenge the jury selection process. *Ibid.; United States v. Lawson*, 670 *F.*2d 923 (10th Cir.1982).

The predicate for the right of inspection of the records used in the selection of a jury under § 1867(f) is that a motion is being prepared to challenge the jury selection process. There is no required standard of proof which the movant must establish to gain access to the nonpublic records of jury selection.

*United States v. Alden,* 776 *F.*2d 771, 773 (8th Cir.1985). A motion for inspection may not "be denied because it is unsupported by a 'sworn statement of facts which, if true, would constitute a substantial failure to comply "with the provisions of the Jury Selection Act." ' " *Alden, supra* at 773, citing, *United States v. Marcano–Garcia,* 622 *F.*2d 12, 18 (1st Cir. 1980). The motion to inspect may not be denied for defendant's failure to provide in an affidavit facts which show " 'probability of merit in the proposed jury challenge.' " *Alden, supra* at 774, citing, *United States v. Beaty,* 465 *F.*2d 1376, 1380 (9th Cir.1972).

The Jury Selection and Service Act of 1968 was reviewed by the United States Supreme Court in *Test v. United States,* 420 *U.S.* 28, 95 *S.Ct.* 749, 42 *L.Ed.*2d 786 (1975). Test filed two pretrial motions. One was to dismiss the indictment against him asserting that the master lists from which his grand jury had been selected systematically excluded a disproportionate number of students, blacks and people with Spanish surnames which he alleged violated his Sixth Amendment right to an impartial jury and the provisions of the Jury Selection and Service Act of 1968. In his second pretrial motion, defendant requested permission to inspect and copy the jury lists "pertaining to the grand and petit juries in the instant indictment," as the information contained was necessary for discovering evidence to prove his claims of impermissible exclusion of jurors from the master lists which were based on voter registration records. The Supreme Court held that § 1867(f) grants a litigant an essentially unqualified right to inspect jury lists. The Court held that without the ability to inspect and review the jury lists used to constitute the grand jury or the petit jury it would be almost impossible to determine whether the defendant has a meritorious basis to constitute a valid challenge to the jury. The Court did not rest its holding solely on § 1867(f). It stated:

Thus, an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring "grand and

petit juries selected at random from a cross-section of the community." 28 *U.S.C.* § 1861 [28 *U.S.C.S.* § 1861]. [*Test, supra,* 420 *U.S.* at 30, 95 *S.Ct.* at 751.]

*See also, State v. Rochester, supra,* 54 *N.J.* at 91, 253 *A.*2d 474.

While we find *Test* instructive it does not directly speak to the issue before us because the defendant in *Test* did not request discovery of the information contained in the Federal Juror Qualification Questionnaire. However, information in the federal questionnaires has been made available to litigants challenging jury arrays. In *Mobley v. U.S.,* 379 *F.*2d 768 (5th Cir.1967), decided before the Jury Selection and Service Act of 1968 was enacted, the defendant sought to inspect the written questionnaires to determine the race of the members of the grand and petit jury pools. Mobley asserted the information contained in the questionnaires was pertinent to the issue of systematic exclusion of blacks from serving as jurors. The court stated the justiciable issue to be the balancing of the right of a defendant in a criminal case to both indictment and trial by juries from which blacks have not been arbitrarily and systematically excluded versus the confidentiality of jury questionnaires. It concluded that evidence of the race of the jurors is an "important factor of substantial value and should be considered by the court in connection with the other evidence pertaining to the method of selection of persons on the jury lists. Confidentiality of the jury questionnaires must accordingly yield to this major consideration." *Id.* at 773. Because of concern that other information contained in the jury questionnaire would be impermissibly disclosed, the court acknowledged that "appropriate safeguards" may be imposed to limit disclosure of information solely to that of the race of the juror. *Ibid.*

In *United States v. Davenport,* 824 *F.*2d 1511 (7th Cir.1987), the Circuit Court of Appeals affirmed the district court's denial of defendant's demand to obtain completed juror questionnaires. That court held that defendant's perceived right to inspect the completed juror questionnaires in addition to the jury lists which were available as a public record on the

strength of *Test* was misplaced. Defendant's challenge to the jury selection plan was that it had the effect of systematically excluding from the master lists disproportionate numbers of students, blacks, people with Latin surnames and citizens who are not registered to vote. Although defendant acknowledged that voter registration lists were a proper source for the selection of jurors, he alleged those lists must be supplemented from other sources without having to demonstrate why records in addition to the jury lists were required. The court held that defendant's motion for review and inspection of the completed jury questionnaires was properly denied absent a showing of need for more information than that already available to defendant for the preparation of a motion under the Jury Selection and Service Act of 1968. *Davenport, supra* at 1515. The court found that voter registration lists represent a sufficient cross-section of the community to satisfy the act absent "some particular circumstance or scheme undermining the worthy purposes of the Act." The defendant's claim of an insufficiency of names of Hispanics on the voter registration list without a showing of "some substantial Hispanic disparity" was held insufficient to permit him to inspect the completed juror questionnaires. *Ibid.* The court did not, however, define what was needed to establish substantial underrepresentation.

We find many parallels between the federal model and Judge Lenox's decision below. We hold that he properly considered the pertinent differences between a motion for discovery by a defendant to test the validity of the selection of a grand jury and a motion by a defendant for an evidentiary hearing to test the validity of the composition of that grand jury in order to dismiss an indictment. He opined that a defendant who shows that he is unable to determine whether he has a meritorious jury challenge, despite preparation of a statistical analysis which has exhausted all available data but presents a possibility thereof, should be permitted the requested discovery pursuant to judicial supervision. *See,* 28 *U.S.C.A.* § 1867(f); *Test, supra; Alden, supra.* He properly recognized that the application

should not be frivolous nor made for purposes of delay or harassment. He correctly gave consideration to the burden placed upon the public when extensive time and energy of public resources is devoted to the discovery process. *See, Mobley, supra* at 773. He also gave due consideration to the significant interest of the grand jurors themselves and their right not to have their lives intruded upon long after their service to the grand jury is over. Judge Lenox engaged in a delicate balancing process which culminated in the exercise of his discretion in allowing the questionnaire to be mailed to the identified group of grand jurors, subject to the conditions he imposed.

As the Assignment Judge designated pursuant to *N.J.S.A.* 2A:73A–2 and *R.* 3:6–11, Judge Lenox had the responsibility to administer statewide grand jury selection, *R.* 3:6–1, in a manner consistent with the Federal and State Constitutions, as interpreted in *State v. Ramseur*, 106 *N.J.* 123, 212–238, 524 *A.*2d 188 (1987) and *State v. Rochester*, 54 *N.J.* 85, 253 *A.*2d 474 (1969). This duty requires the sound exercise of discretion by the Assignment Judge so designated. In light of the authorities above cited, we do not view this limited inquiry, authorized by Judge Lenox to be made upon his judicial stationery, as a mistaken exercise of discretion.

> Judicial discretion, sound discretion guided by law so as to accomplish substantial justice and equity, is a magisterial, not a personal discretion. [Citation omitted]. It is legal discretion, in which the judge must take account of the applicable law and be governed accordingly. If the judge misconceives or misapplies the law, his discretion lacks a foundation and becomes an arbitrary act. When that occurs, the reviewing court should adjudicate the matter in light of the applicable law to avoid a manifest denial of justice. *In re Presentment of Bergen Cty. Grand Jury*, 193 *N.J.Super.* 2, 9 [471 *A.*2d 1203] (App.Div.1984); citing, *State v. Steele*, 92 *N.J.Super.* 498 [224 *A.*2d 132] (App.Div.1966); *Kavanaugh v. Quigley.* 63 *N.J.Super.* 153 [164 *A.*2d 179] (App.Div.1960).

The criminal discovery rules, *R.* 3:13, have undergone substantial reconsideration and revision in the past two and a half decades. They have been made more liberal with the result that the prosecutor's entire file is, in effect, available to a

defendant as a matter of right, subject, however, to an appropriate protective order. *Pressler, Current N.J. Court Rules,* Comment 1 *R.* 3:13–3 (1990). We find it to be contrary to the spirit of liberalization of application of the discovery rules for defendants in criminal cases to be now compelled to meet a showing of "good cause" or "probable cause" before they are entitled to know that the grand jury was fairly selected from a fair cross-section of the community. It would be virtually impossible for defendants who are endeavoring to ascertain if a successful attack on the grand jury selection process can be advanced if the facts necessary to prove a defect in the selection process are withheld. On the other hand defendants may not come before a court and ask for the court's aid to obtain information as to the race and ethnicity of the pool of jurors who comprised the jury which indicted them without showing they have in good faith exhausted available data and that their request for further data is not made for delay, harassment, or for impermissible intrusion upon others and upon public resources. We hold that the conclusions reached by Dr. Lamberth were predicated upon use made of all available data. The validity of his ensuing statistical analysis is not before us and we do no more than acknowledge it forms the predicate for the showing of need for the data requested by defendants. At this posture of this case that is enough.

Judge Lenox found defendants had met the necessary criteria for relief. The record supports that conclusion.

Affirmed.