158 N.J. Super. 269 (1978)
385 A.2d 1258
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALFRED A. PORRO, JR., AND THOMAS JONES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1978.
Decided April 13, 1978.
*271 Before Judges HALPERN, LARNER and KING.
Mr. Bernard L. Segal argued the cause for appellant Alfred A. Porro, Jr., pro hac vice (Mr. Michael A. Querques, attorney).
Mr. James D. Checki, attorney for appellant Thomas Jones, relied on argument of Mr. Bernard L. Segal (Messrs. Checki & Politan, attorneys).
Mr. James Mayer, Assistant Prosecutor, argued the cause for respondent (Mr. Roger W. Breslin, Jr., Bergen County Prosecutor, attorney).
The opinion of the court was delivered by KING, J.A.D.
These defendants were indicted by a Bergen County grand jury in October 1975 for the crimes of conspiracy and misconduct in office. They brought timely motions at the trial level challenging the array of grand jurors. The motions were denied by the trial judge for the *272 reasons stated in his reported opinion at 152 N.J. Super. 259 (Law Div. 1977). We granted defendants' motions for leave to appeal and now affirm.
Defendants challenge the method of selection and the composition of the grand jury returning this indictment. They advance two grounds for their position: (1) the systematic exclusion of full-time students who they allege comprise a constitutionally cognizable class, and (2) the alleged substantial under-representation of certain classes of jurors, namely, women, blacks, laborers and blue-collar workers. Defendants claim the procedures utilized in selecting the grand jury violated their rights to due process and equal protection under the Federal Constitution, as well as their state constitutional rights.
As the trial judge properly noted, the federal Fifth Amendment right to indictment by a grand jury has not been selectively incorporated into the Fourteenth Amendment as a fundamental right applicable to the individual states. However, the State of New Jersey has extended the right of indictment to its citizens under the State Constitution. N.J. Const. (1947), Art. I, par. 8. State constitutional principles require that grand jury selection "be so designed as to insure that juries are impartially drawn from community cross-sections." State v. Rochester, 54 N.J. 85, 88 (1969). See also State v. Smith, 102 N.J. Super. 325 (Law Div. 1968), aff'd o.b., 55 N.J. 476, 481 (1970). In the federal "constitutional context, the court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross-section of the community." Taylor v. Louisiana, 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975).
Since the decision of our Supreme Court in the Rochester case, grand jurors have been randomly selected from voter registration lists. Such lists, as well as supplementary sources, are used in federal courts. 28 U.S.C.A. § 1863. The question before us is whether full-time students are a constitutionally identifiable or cognizable group whose benign, *273 but systematic, exclusion from grand jury service in Bergen County renders this indictment constitutionally infirm. As the trial judge's opinion notes, this exclusionary practice has been discontinued.
Our state statutes actually criminalize any conduct by officials whereby a qualified citizen is prevented from serving on a grand or petit jury in any court "on account of race, color, creed, national origin, ancestry, marital status or sex." N.J.S.A. 2A:72-7. The federal counterpart prohibits exclusion from service "on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C.A. § 1862. At least legislatively, neither full-time students, nor indeed any occupational status, has achieved cognizability in this context.
The United States Supreme Court has recognized several constitutionally cognizable classes for jury selection purposes: race, gender and economic class. Racial dis-discrimination in jury selection was held violative of the Federal Constitution in Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). Such discrimination was said by Justice Black to be "at war with our basic concepts of a democratic society and a representative government." 311 U.S. at 130, 61 S.Ct. at 165. Most cases raising the issue have done so on racial grounds. See Annotation, "Jury Selection  Group Discrimination," 33 L.Ed. 2d 783 (1972). See also, Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). Clearly, a criminal defendant need not be a member of the excluded group before he has the requisite standing to raise the constitutional objection. Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).
In Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), a tort claimant challenged a petit jury array from which the clerk and jury commissioner had deliberately and intentionally excluded all persons who worked for a daily wage. The court found this class distinction and discrimination "abhorrent to the *274 democratic ideals of trial by jury" and a constitutional violation. Justice Murphy stated:
This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community, frequently such complete representation would be impossible. [328 U.S. at 220, 66 S.Ct. at 985.]
The thrust of the Thiel holding was against discrimination by economic class, not any specific occupation.
The high court's latest expression on this subject of systematic exclusion of an identifiable class from jury service is found in Taylor v. Louisiana, supra. See also, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The convicted defendant in Taylor attacked the Louisiana petit jury practice which resulted in the virtual exclusion of women from the panels. At the time of defendant's trial, Louisiana law provided that a woman would not be selected for service unless she had previously filed a written declaration of her desire to be called for service. Fifty-three percent of the persons eligible for service from the parishes where the panel was drawn were women. As a result of the local practice only 10% of the persons on the jury wheel were women, only 12 women were actually among the 1800 persons drawn to fill petit jury venires in the calendar year of defendant's conviction, and on defendant's venire, totaling 175 persons, there were no women.
There is little in the Taylor case which aids in analyzing whether a particular group is "cognizable or identifiable" for constitutional purposes. In the opinion of the court, Justice White pointed out that the historic purpose of the jury was "to guard against the exercise of arbitrary power  to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge." 419 U.S. at 530, 95 S.Ct. at 698. Justice White concluded: "This *275 prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool." Id. (emphasis added). At least we can discern that the court was obviously impressed with the size of the class systematically excluded, 53%, as being violative of the fair cross-section requirement. In Peters v. Kiff, supra, 407 U.S. at 503, 92 S.Ct. 2163, the court used the language "large and identifiable."
Justice White further observed in Taylor that "the fair cross-section principle must have much leeway in application," and "it should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." 419 U.S. at 538, 95 S.Ct. at 702.
The records of the Department of Education reflect that Bergen County has approximately 44,000 full-time students, the highest of any county in the State. We do not know what percentage of these students are registered to vote. At oral argument the parties stipulated, based on the available statistics, that if full-time students were not excluded from the typical array of grand jurors in Bergen County, they would comprise between 5 and 6% of those eligible to serve. We are therefore reflecting on a much smaller numerical class than that which the Louisiana system excluded in Taylor. Students are of both sexes, all races, and from all economic classes. Therefore the benign but systematic exclusion of full-time students in Bergen County did not target a large percentage of the population and did not affect any particular group, i.e., gender  race  economic class, previously proscribed by the highest court from systematic exclusion.
We are satisfied from this record, and our experience, that full-time students tend to fall in the 18 to 35 age bracket. As the trial judge noted, today's trends point towards greater formal educational experience for all age groups, but the *276 age distribution of the full-time student is still in the younger brackets.
A student is perhaps most appropriately placed in an occupational category. Our statutes provide for 12 occupational exemptions, all presumably cloaked, at least to some extent, with the public interest or public service; e.g., police, firemen, game wardens, physicians, dentists, active military personnel, school teachers, custodians of minor children, certain state employees, telephone operators and linemen, legislators, and first aid and rescue squad members. N.J.S.A. 2A:69-2. The Bergen County practice created an ad hoc exemption for full-time students because of the alleged inconvenience and hardship jury service would impose.
It is noteworthy that legislative exemptions based upon occupational status or the preservation of the uninterrupted important function served by exempt classes have been sanctioned as reasonably appropriate and not violative of constitutional standards. Taylor v. Louisiana, supra, 419 U.S. at 534, 95 S.Ct. 692. Rawlins v. Georgia, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906) (venire excluding lawyers, ministers, doctors, dentists, railway engineers and firemen  not unconstitutional). Similarly, it may be asserted that the elimination of full-time students by the jury commissioners was reasonably warranted on the basis of the preservation of their educational process without the substantial interruption which would be required by grand jury service.
Since this prior practice did not represent an invidious discrimination based on race, color, creed, national origin, ancestry, matrimonial status or sex, we do not find it offended constitutional principles. It was thus a practice which was supportable on a rational basis, in harmony with the administrative powers granted to the jury commissioners under the supervision of the assignment judge. Although the termination of this practice is unquestionably preferable, we are not persuaded that it violated the constitutional rights of defendants or warranted the dismissal of the indictment. *277 In the absence of an infirmity of constitutional dimension, any impropriety in the practice followed by the jury commissioners in the grand jury selection process requires correction but does not necessarily mandate the dismissal of an indictment which is otherwise legally valid.
We are directed to no other holding by an appellate court in support of defendants' contention that full-time students are a constitutionally cognizable class. Several trial courts in New York have so held. People v. Attica Brothers, 79 Misc.2d 492, 359 N.Y.S.2d 699 (Sup. Ct. 1974); People v. Marr, 67 Misc.2d 113, 324 N.Y.S.2d 608 (Justice Ct. 1971). Several appellate courts have in dicta seemed to agree in principle with defendants' contention. Paciona v. Marshall, 45 A.D.2d 462, 359 N.Y.S.2d 360 (App. Div. 1974); Brown v. State, 58 Wis.2d 158, 205 N.W.2d 566 (Sup. Ct. 1973); Anderson v. Casscles, 531 F.2d 682, 686 (2 Cir.1976). Cf. United States v. Butera, 420 F.2d 564 (1 Cir.1970). See also, Himelrick, "Under-representation of Young Adults on Juror Source Lists," 19 Wayne L. Rev. 1287 (1973). Another panel of this court has recently stated in dictum, relying upon the trial court opinion in the instant case, that "students, if they can be considered a `class' at all, are not, in our view, a `cognizable group' exclusion of which will rob a petit or grand jury of its cross-sectional quality." State v. Butler, 155 N.J. Super. 270 (App. Div. 1978).
We agree with that conclusion. The excluded group  full-time students  is relatively small in number, agreed to be 5% to 6% of the potential venire. It has no special attributes of gender, race or economic class. Some effort was made to persuade the trial judge that the group had a certain distinct cultural or psychological identity. These proofs were not persuasive to the trial judge, nor are they to us. We are not, convinced from the record that full-time students in Bergen County reflect any different political or social values than the cross-section of the population of the county. The age orientation towards the younger years is *278 not enough, standing alone, to persuade us to a contrary view as to the group's cognizability. See U.S. v. Guzman, 337 F. Supp. 140 (S.D.N.Y. 1972), aff'd 468 F.2d 1245 (2 Cir.1972), cert. den. 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973). The group is essentially an "occupational identity"  and in no case has the United States Supreme Court held a jury unconstitutional for an occupational exclusion.
Defendants next contend that the trial judge erred in refusing to dismiss the indictments on the ground that laborers, blue-collar workers, blacks, women and persons in the age bracket of 18-34 years were under-represented because of outdated voter registration rolls and systematic exclusion.
The proofs demonstrated that Bergen County failed to update its voter registration list every four years, as required by N.J.S.A. 19:31-15. This statute requires the county election officials "once during every four years [to] cause the entire registry list to be investigated by house-to-house canvass to establish the fact of continued residence, removal, death, disqualification or improper registration." We fail to see how noncompliance with this statutory mandate aids defendants' contentions in this case. The purpose of the registration canvass is to eliminate "deadwood" from the voting rolls and keep the records up to date in order to avoid fraudulent voting and improper registration. We do not believe Bergen County's failure in this respect has any relationship to the alleged disproportionately skewed representation of certain cognizable groups.
Defendants presented the affidavit of Dr. Peter W. Sperlich, Professor of Political Science at the University of California, in support of their contention that certain constitutionally cognizable groups were under-represented on the panel returning the indictment. Unfortunately, the trial judge made no finding of fact as to the veracity of his affidavit. Assuming the allegations therein to be true, we do not find a constitutional infirmity.
*279 Dr. Sperlich alleged an under-representation between the general population of Bergen County in comparison to the actual jury array as follows:

Gender Women under-represented 7%
Age 18 to 34 under-represented 14%
Economic Class Laborers under-represented 30%
 Blue-collar workers under-represented 29%

No statistics were presented as to the alleged under-representation of blacks. The assignment judge readily acknowledged that persons in the less remunerative economic classes, laborers and some blue-collar workers, as well as blacks, are much more likely to request, and receive, individual excuses from service. Many in these groups are wage earners who will suffer great hardship if they serve on grand juries over possibly many months. But these classes were not systematically excluded, because the excuses were on an individual basis. The United States Supreme Court stated in Thiel v. Southern Pacific Co., supra, that a judge clearly "would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship," 328 U.S. at 224, 66 S.Ct. at 987, and repeated in Taylor v. Louisiana, supra, "The states are free to grant exemptions from jury service to individuals in case of special hardship or incapacity. * * *" 419 U.S. at 534, 95 S.Ct. at 700. Systematic exclusion of an identifiable class, not individual excuses, runs afoul of the Constitution.
The assignment judge also noted that older women who cannot drive to this courthouse, or otherwise have personal problems in serving, are frequently excused on request. Of course, women with custody of minor children are either not in the jury wheel by reason of exemption, if they give the required notice to the jury commissioners under N.J.S.A. 2A:69-2(g), or if they do not, are usually readily excused on request by the assignment judge.
An additional reason why certain groups are under-represented in the jury wheel, aside from individual excuses, *280 is apparent. The Final Report for 1977 of the Annual Chief Justice Earl Warren Conference on Advocacy in the United States, entitled "The American Jury System," sponsored by the Roscoe Pound-American Trial Lawyers Foundation, makes the following statement relating to juries selected from voter lists:
The following Table 1 is taken from the study of D. Kairys, J.B. Kadane, J.P. Lehoczky  Jury Representativeness: A Mandate for Multiple Source Lists [65 Cal. L.R. 776 (1977)].
Table 1 shows that the voter list not only excludes over one-third of the whole population, but also excludes various subgroups of the population at differing rates. It has too few younger voters and too many older ones. It has too few of the minorities, the poor and the lesser educated, and relatively too many of the better off and educated.
Such shortcomings of the voter lists in representing the total community have led some jurisdictions to implement the sources developed by meshing voter lists with additional lists, such as that of licensed automobile drivers. [at 72]
These disparities arise because of the tendency of certain groups to register or not register to vote. The Kairys study demonstrated that when voting lists are used as the source for the venire, blacks tend to be under-represented by 12%; persons of Hispanic origin by 44%; persons between the ages of 18 and 20 by 41%; between the ages of 21 and 24 by 27%; between the ages of 25 and 29 by 15%. The higher the level of education, the more the tendency for over-representation, and vice versa. The same correlation is true with income. The statistics also demonstrate that wage earners and blue-collar workers are under-represented by 13%.
These statistical disparities, which undoubtedly exist between the population of Bergen County and those persons who actually sit on the jury panels, are not, we are satisfied, the result of any intentional or systematic discrimination or exclusion, but rather the result of the use of voter registration lists as the source of the venire, and the tradition of individualized excuses permitted by the court. See People v. Chestnut, 26 N.Y.2d 481, 311 N.Y.S.2d 853, *281 859, 260 N.E.2d 501, 505 (Ct. App. 1970), where New York's highest court approved New York County's quasi-voluntary grand jury selection system which resulted in much greater disparity than the present New Jersey system.
The Administrative Office of the Courts is considering alternatives to the exclusive use of voting registration lists in this State, including possible use of motor vehicle registrations, real estate titles and state income tax returns. There would appear to be no statutory impediment to a more universal selection method. See N.J.S.A. 2A:70-4; N.J.S.A. 2A:70-5. The federal statute approves use of voter registration lists and "some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights" insured by the act. 28 U.S.C.A. § 1863 (b) (2).
We are not persuaded that there is a constitutional infirmity in the grand jury returning this indictment. Our Supreme Court has stated that a court's power to dismiss an indictment is not to be exercised except on the clearest and plainest grounds, and the indictment should stand unless palpably defective. This test is not met and the decision of the trial judge is affirmed. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Polito, 146 N.J. Super. 552, 557 (App. Div. 1977); State v. Ferrante, 111 N.J. Super. 299, 304 (App. Div. 1970).
HALPERN, P.J.A.D. (dissenting).
The majority have fairly and fully set forth the relevant facts and applicable law, including the law of those jurisdictions that hold contrary to the conclusions reached by them, so that to the extent possible I will not restate such facts or law. Additionally, I am in accord with their determinations, except insofar as they conclude that all qualified full-time students[1] are not *282 a constitutionally protected cognizable class, and the exclusion of such students is not a constitutional infirmity.
The exclusion of all full-time students from grand and petit jury service in Bergen County emanated from an administrative decision of the grand jury commissioners. There is no provision in the applicable statutes (N.J.S.A. 2A:68-1 through 2A:73-7) which specifically empowers the commissioners, or anyone else, to exclude or give exemption from jury service to those qualified to serve. At best, it can be said that the commissioners have the inherent discretionary power to canvass the county and formulate the lists of jurors to serve. N.J.S.A. 2A:70-5 and N.J.S.A. 2A:70-1; State v. Forer, 104 N.J. Super. 481, 492-493 (Law Div. 1969). However, the exercise of that discretion entails some dangers and we must be ever vigilant to prevent discriminatory practices. State v. Rochester, 54 N.J. 85, 90 (1969).
It is one thing for the commissioners to formulate a qualified jury list for presentment to the assignment judge but it is another to grant blanket exemptions by administrative fiat to an otherwise qualified group that consists of about 44,000 persons.[2] The right to grant exemptions from jury service must not be confused with the right to excuse persons selected for service when valid reasons exist therefor. The right to create exemptions from jury service is a legislative function, and the Legislature has expressed its views in N.J.S.A. 2A:69-2. Throughout the years the Legislature has increased the classes of persons exempted. Today, there are 12 classes of persons exempted and, significantly, students of any classification are not given exempt status. I would hold that the commissioners had no power to exempt full-time students from jury service because such power is vested solely in the Legislature.
*283 Admittedly, N.J.S.A. 2A:72-7 criminalizes conduct by officials whereby qualified citizens are prevented from serving on juries "on account of race, color, creed, national origin, ancestry, marital status or sex." The statute proscribes excluding classes of persons from serving and imposes criminal penalties for violations of the statutory mandate. This does not mean that courts must sanction arbitrary and discriminatory classifications not proscribed by the statute.
Every defendant has the constitutional right to have the grand jury that indicts him selected from a representative cross-section of the community. While a defendant may not be entitled to a grand jury of any particular composition, nor one which reflects the various distinctive groups in the county, the exclusion of identifiable qualified segments of the population is proscribed. See Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The systematic and automatic exclusion of 44,000 full-time students, or a substantial under-representation of such a group, in my view eliminates a large, distinctive and cognizable group of prospective jurors, who are reasonably representative of the community, regardless of the benign intentions of the commissioners. This may not be tolerated. See Taylor, supra, 419 U.S. at 530, 95 S.Ct. 692; Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); State v. Rochester, supra, 54 N.J. at 89; State v. Stewart, 2 N.J. Super. 15 (App. Div. 1949).
Although decided in a different context, but certainly as important as the issue confronting us, Justice Jacobs, speaking for a unanimous court on the right of eligible college students to vote, had no difficulty in determining that college students "were subjected as a class to questioning beyond all other applicants * * *." Worden v. Mercer Cty. Bd. of Elections, 61 N.J. 325, 348 (1972). The court recognized college students as an important, recognizable and *284 knowledgeable force in our society that had been discriminated against, even when applying a compelling state interest test to the exclusion. I find it extremely difficult to decide that full-time students' constitutional right and obligation to serve on a grand or petit jury is of lesser constitutional value than the privilege to vote. Citizenship not only grants fundamental rights and privileges, but also imposes related obligations and responsibilities to act for society when called upon to do so.
Likewise, if the exclusion from jury service of an economic class (all daily wage earners) is proscribed, as was the case in Thiel v. South Pacific Co., supra, how do we justify the deliberate exclusion of a cognizable, knowledgeable group such as full-time students who are an integral and representative part of the community? The issue projected is not easy of solution. It is an issue of first impression in New Jersey and is worthy of our deepest consideration. I am in accord with the concern expressed by the court in Anderson v. Casscles, 531 F.2d 682, 686 (2 Cir.1976), that the automatic exclusion of students poses a substantial constitutional question which must be decided.
If courts are to sanction the intentional and systematic exclusion of all full-time students, as was done here, and deny them the right to function as qualified members of our society, the limits to which the jury commissioners could go in eliminating other distinctive and cognizable qualified groups would be bounded only by the fertile imaginations of the jury commissioners and would usurp the function of the Legislature. There are many cognizable groups in our society who for valid reasons may be expected to ask to be excused from jury duty, but that is a far cry from granting them exemption from such duty.
Accordingly, I would reverse.
NOTES
[1] The term "full-time students" refers to those attending colleges on a full-time basis.
[2] The number of full-time students in Bergen County was stipulated to be between 5% and 6% of the voting population. We have no way of knowing how many of such students attend colleges in New Jersey, whether they are desirous of serving, or whether they could arrange to serve without interfering with their studies.