426

[No. 7282-0-I. Division One. May 26, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. CLYF HUGH
GLADSTONE, *Appellant*.

*Hollis Hill of Seattle–King County Public Defender
Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Thomas Kelly,
Deputy*, for respondent.

WILLIAMS, J.—This appeal from a judgment of conviction
of first degree felony murder, entered upon the verdict of a
jury, is based upon eight assignments of error concerning

"death–qualification" of the jury, composition of the venire and an accomplice instruction. We affirm.

Clyf Hugh Gladstone and his brother robbed and killed a taxi driver in King County. Gladstone filed a motion in opposition to the impaneling of a "death–qualified"[1] jury because, as there was no evidence of premeditation, the case was noncapital and such juries are more "conviction prone."[2] The trial court denied the motion, but after the State's case in chief was presented, the charge of first degree premeditated murder against Gladstone was dismissed for lack of evidence.

■ The exclusion of potential jurors opposing capital punishment is not reversible error where the sentence imposed is life imprisonment unless there is proof that the jury selected was conviction prone. *Bumper v. North Carolina,* 391 U.S. 543, 545, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968); *State v. Golladay,* 78 Wn.2d 121, 146, 470 P.2d 191 (1970).

Gladstone introduced several studies conducted by forensic sociologists and criminologists supporting his theory that "death–qualified" juries are more conviction prone. Among them: Bronson, *On the Conviction Proneness and Representativeness of the Death–Qualified Jury: An Empirical Study of Colorado Veniremen,* 42 U. Colo. L. Rev. 1 (1970); Jurow, *New Data on the Effect of a "Death Qualified" Jury on the Guilt Determination Process,* 84 Harv. L. Rev. 567 (1971); H. Zeisel, *Some Data on Juror Attitudes Toward Capital Punishment* (1968).

---

[1]The term "death–qualified" refers to the practice of selecting jurors who are not unequivocally opposed to the death penalty. *Cf. Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968) (exclusion of veniremen for merely questioning use of death penalty violates Sixth and Fourteenth Amendments).

[2]The term "conviction prone" describes a supposed juror predilection to favor the prosecution in a criminal trial. Thus, the term "means that a death–qualified jury is more likely to convict than a nondeath–qualified jury." (Footnote omitted.) *Spinkellink v. Wainwright,* 578 F.2d 582, 593 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 59 L. Ed. 2d 796, 99 S. Ct. 1548 (1979).

Counsel for Gladstone painstakingly questioned prospective jurors on their attitudes toward the death penalty and their capacity to fairly determine Gladstone's guilt or innocence. The record and agreed report of the voir dire demonstrates that the jurors selected were not influenced as to the question of Gladstone's guilt or innocence because of their feelings about the death penalty. There is absolutely nothing in the record establishing that the jury was conviction prone. *See, e.g., Spinkellink v. Wainwright,* 578 F.2d 582, 594–96 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 59 L. Ed. 2d 796, 99 S. Ct. 1548, *rehearing denied,* 441 U.S. 937, 60 L. Ed. 2d 667, 99 S. Ct. 2064 (1979); *Commonwealth v. Curry,* 368 Mass. 195, 204, 330 N.E.2d 819 (1975).

The second issue is the constitutional validity of the venire from which the jury was chosen. Gladstone contends that he was tried by a jury which was drawn from a panel that did not represent a cross section of the King County community. Gladstone presented statistics which tended to establish underrepresentation of some minority groups in the King County venire.[3] Those statistics show an improvement over the ones reported in *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977), where it was held that a 2.7 percent disparity between population and jury representation

---

[3]Gladstone's evidence may be conveniently summarized in tabular form:

|  | 1978 King County General Population Percentage | January–October 1978 Jury Pool Percentage |
|---|---|---|
| White | 89.0 | 94.4 |
| Hispanic | 2.5 | 0.3 |
| Black | 3.8 | 2.7 |
| Indian | 0.8 | 0.1 |
| Asian | 3.6 | 2.5 |
| Other | 0.4 | — |
| Total Minority | 11.0 | 5.6 |

Gladstone also argues that young people/students and poor people are also underrepresented in King County venire. None of those groups is "cognizable" for Sixth or Fourteenth Amendment purposes. *See United States v. Potter,* 552 F.2d 901, 905 (9th Cir. 1977) (young people not a cognizable group); *Granviel v. State,* 552 S.W.2d 107, 120 (Tex. Crim. App. 1976), *cert. denied,* 431 U.S. 933, 53 L. Ed. 2d 250, 97 S. Ct. 2642 (1977) (lower income people not a cognizable group). *State v. Porro,* 158 N.J. Super. 269, 278, 385 A.2d 1258, *cert. denied,* 439 U.S. 1047, 58 L. Ed. 2d 706, 99 S. Ct. 724 (1978) (students not a cognizable group).

is not "constitutionally significant." *Id.* at 442.

Nonetheless, Gladstone asserts that he established a prima facie case of unconstitutional minority underrepresentation on the jury venire,[4] entitling him to expert's fees to conduct a more accurate statistical analysis of the minority composition of the King County population at large as compared with minority composition of the venire. A far more substantial disparity is required before a judicial award of expert's fees is appropriate. The most significant disparity shown by Gladstone's statistics is for Hispanic citizens, who compose approximately 2.5 percent of the general population of King County and 0.3 percent of the jury venire, resulting in a 2.2 percent difference. That is significantly below the 4.71 percent disparity held to be not constitutionally significant in *Simmons v. United States,* 406 F.2d 456, 461–63 (5th Cir.), *cert. denied,* 395 U.S. 982, 23 L. Ed. 2d 770, 89 S. Ct. 2144, *rehearing denied,* 396 U.S. 871, 24 L. Ed. 2d 129, 90 S. Ct. 45 (1969). Accordingly, the trial court did not err in refusing Gladstone's request for expert's fees.

The third issue, concerning an instruction on criminal intent as applied to an accomplice, is decided, adversely to Gladstone, in *State v. McKeown,* 23 Wn. App. 582, 593, 596 P.2d 1100 (1979).

Affirmed.

SWANSON and CORBETT, JJ., concur.

Reconsideration denied June 24, 1981.

Review denied by Supreme Court December 18, 1981.

---

[4]Gladstone also presented evidence showing that minority underrepresentation on the jury venire was not caused by chance.