[No. 7365–6–I.   Division One.   December 21, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. HOWARD
FLOWERS, *Appellant.*

---

719

*John Ziegler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

CORBETT, J.—Howard Flowers was charged with murder in the first degree. A codefendant, George Leon Goodrie, was charged in the same information, but after he agreed to

testify against Flowers, the charge against Goodrie was dismissed. After a 2–month trial, the jury found Flowers guilty of murder in the first degree and, in a special verdict, that it was committed in the course and furtherance of arson in the first degree, RCW 9A.32.030(1)(c)(4). Defendant appeals his conviction and sentence to life imprisonment.

At about 1:30 p.m. on October 19, 1977, employees of the Kay Manufacturing Co. in the Western Farmers Building on the Seattle waterfront became aware of a fire in the railroad spur area at the back of the building. It was an area known to be used by transients as a sleeping "pad." The victim was discovered, engulfed in flames. When he was pulled from the fire, he told his rescuers it was "too late" to save him. Paramedics cut the burning clothing from his body and found a rope tied around his neck. There was blood coming from his mouth and nose. A fire department investigator at the scene asked the victim if he had tried to kill himself, to which the victim responded, "No, they did it to me." He then described the assailants. The victim died shortly after making this dying declaration.

Goodrie told the jury that Flowers had accused the victim of stealing the defendant's whiskey, and kicked him at least three times. When Goodrie protested, the defendant said he was teaching the victim a lesson. Flowers then pulled the victim next to a cyclone fence, where he tied a rope around the victim's neck. As Goodrie was leaving, he saw Flowers pour wine on the victim, pile paper near him, and light the paper with a match.

Flowers testified that he had felt sorry for the victim, who was partially crippled, and had given him a sandwich. He became angry when he discovered that the victim had consumed his whiskey, and "backhanded" the victim. He admitted kicking the victim twice in the shoulder and rib area, and inadvertently splashing some wine on him as he grabbed a bottle of wine from the victim. Flowers testified that Goodrie was also angry at the victim for drinking the whiskey, Goodrie having said to the victim, "I should kill you, you s.o.b." Flowers said he then left the area, but when

he stopped on his way to town, he saw smoke coming from the enclosure. Goodrie soon joined him and they went to continue drinking. They were arrested shortly thereafter, based on the description given by the victim.

■ Defendant first assigns error to the giving of instruction No. 17, which defines knowledge:

A person knows or acts knowingly or with knowledge when
(1) he or she is aware of a fact, facts or circumstances or result described by law as being a crime; or
(2) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by law as being a crime.
Acting knowingly or with knowledge also is established if a person acts intentionally.

Although this instruction was disapproved in *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980), Flowers' reliance upon *Shipp* is misplaced. The evidence could only support a finding that either Flowers or Goodrie lit the fire intentionally, there being no evidence of negligence or recklessness. Whoever lit the fire did so with actual knowledge, and the giving of the knowledge instruction was harmless. *State v. Simmons,* 28 Wn. App. 243, 246, 622 P.2d 866 (1980).

Defendant next assigns error to the instruction defining malice, which was found to be defective in *State v. Johnson,* 23 Wn. App. 605, 596 P.2d 1047 (1979).

Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, . . .

*State v. Johnson, supra* at 606.

Defendant argues that this instruction misled the jury into believing that malice, an element of arson, must necessarily follow from the facts presented into evidence. To the contrary, he suggests that the evidence could support a finding that he acted without malicious intent. He argues that the fire set at the top of the retaining wall could have

been built to warm the occupants of the enclosure below, as opposed to a fire set *under* Mr. Gunther, which would clearly be a malicious act. Also, defendant argues that tying the victim to a fence, which he denied having done, could have been done as a joke, without malice. Further, he claims that the jury could have interpreted the instruction as requiring a finding of malice if they found that he should have prevented the fire.

■ The evidence does not support any of these arguments. We must look at the instruction in light of the evidence relating to the defendant's conduct. Malice—an evil intent, wish or design to vex, annoy or injure another person—clearly follows from defendant's acts, whether defendant was convicted as the principal or as an "aider or abettor."

The further argument that a nonrebuttable presumption of "malice" is created by the instruction has been answered in the negative:

> [B]y its very language the instruction creates merely a permissible inference. Therefore, the instruction is distinguishable from that condemned in *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), which the Supreme Court said could have been viewed by a reasonable juror as creating a mandatory or conclusive presumption. Moreover, the instructions as a whole made clear that the State had the burden of proving every element of the crime charged, including malice, beyond a reasonable doubt. *See State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978).

*State v. Simmons, supra* at 246–47.

■ Flowers next claims the trial court erred in failing to instruct the jury that they must be unanimous as to which method of committing first degree arson defendant employed, citing *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). Defendant concedes that *Green* is not squarely in point because the alternative factual circumstances upon which arson in the first degree may be based are not, as in *Green,* "separate and distinct criminal offenses," *i.e.,* rape and kidnapping. While jury unanimity as to the underlying

*crime* is required, there is no such unanimity requirement for alternative circumstances, *i.e.,* whether the fire (1) was manifestly dangerous to human life, or (2) damaged a dwelling, or (3) was in a building in which there was a human being. In *Green,* the court found that there was not sufficient evidence for a rational trier of fact to find the defendant guilty of kidnapping beyond a reasonable doubt. Examination of the evidence in this case demonstrates not only substantial evidence of each circumstance, *State v. Richardson,* 24 Wn. App. 302, 304–06, 600 P.2d 696 (1979); *State v. Gallo,* 20 Wn. App. 717, 730, 582 P.2d 558 (1978), but that any rational trier of fact could have found each circumstance was proved beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed.. 2d 560, 99 S. Ct. 2781 (1979); *Green, supra* at 232.

Defendant also assigns error to the trial court's exclusion of testimony by a polygraph expert, Mr. Gillespie, who allegedly would have testified that Goodrie admitted having had blackouts in the past. The purpose of the offered testimony was impeachment of Goodrie's denial of blackouts and as a foundation for later medical testimony regarding alcoholic blackouts. Goodrie, on cross–examination, denied experiencing periodic blackouts. However, on redirect, Goodrie admitted having prior blackouts. Therefore, the court properly excluded Gillespie's testimony as an improper attempt to impeach. *State v. Reed,* 25 Wn. App. 46, 52, 604 P.2d 1330 (1979). Gillespie's testimony would also have been cumulative. Defendant did introduce a great deal of expert testimony to the effect that persons in Goodrie's physical condition often suffer from alcoholic blackouts and also display the symptom of confabulation or making up a story to fit the facts they cannot remember. Nor was Flowers denied the right of effective cross–examination by exclusion of Gillespie's testimony, as contended by defendant. Wide latitude was granted to defense cross–examination which was conducted on many remote and collateral matters. Under these circumstances, defendant was not denied his right to effective cross–examination

within the meaning of *Davis v. Alaska,* 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).

■■ Error is assigned to the State's use of defendant's prior misdemeanor convictions for impeachment purposes. This was permissible under RCW 10.52.030, which was in effect at the time of trial and not yet superseded by ER 609(a), effective April 2, 1979. In addition, defendant claims that the State must prove these convictions were based on constitutionally valid guilty pleas, citing *State v. Holsworth,* 93 Wn.2d 148, 154, 607 P.2d 845 (1980). This issue was decided adversely to the position of appellant in *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981), where the court held that, for impeachment purposes, counsel assisted guilty pleas are prima facie reliable for impeachment purposes. The use of a conviction based upon an allegedly invalid guilty plea does not impinge upon any constitutional right if reliable and probative of credibility. Such evidence is generally considered probative of a defendant's credibility, *State v. Ruzicka,* 89 Wn.2d 217, 226, 570 P.2d 1208 (1977), and its admission is within the trial court's discretion, *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980). The *Holsworth* analysis, which does not deal with impeachment, is not applicable here. The trial court's decision to admit evidence of the prior misdemeanor convictions will not be disturbed, absent a clear showing of abuse. *United States v. Field,* 625 F.2d 862 (9th Cir. 1980).

■ Flowers next argues that he should have been granted probation, asserting that this is authorized by the probation act, RCW 9.95.200–.240. The trial judge was not convinced that he had that authority, but stated that even if he possessed such discretion this would not be an appropriate case for its exercise, apparently because of the heinous nature of the offense and the less than savory background of the defendant. Broad discretion must be afforded the sentencing judge. His decision will not be disturbed unless it can be said no reasonable person would have taken his view. *State v. Bolton,* 23 Wn. App. 708, 716, 598 P.2d 734 (1979). The facts of this crime would make

the decision appear most reasonable.

Defendant raises the issue of the jury not being a representative cross section of his community. Also, because of the prosecutor's request for the death penalty, he argues that he was prejudiced by the process used to qualify the jury for a death penalty case. Both of these issues were decided adversely to appellant's position in *State v. Gladstone,* 29 Wn. App. 426, 628 P.2d 849 (1981).

Affirmed.

SWANSON and DURHAM, JJ., concur.

Reconsideration denied February 10, 1982.

Review denied by Supreme Court June 30, 1982.