[No. 6282-1-III. Division Three. July 2, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM GARY MARTIN, JR., *Appellant.*

134

*Richard L. Cease, Public Defender,* and *Frank Conklin, Special Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark Colwell, Deputy,* for respondent.

MUNSON, J.—William Gary Martin, Jr., appeals his convictions for aggravated first degree murder; the jury did not impose the death penalty. He contends: (1) the jury should have been instructed what crime Martin intended to commit in connection with the burglary; (2) a venireman who was not unequivocally opposed to the death penalty should not have been excused for cause; (3) there was prosecutorial misconduct in closing argument; and (4) the Spokane County prosecutor has violated the public disclosure act, RCW 42.17.250, by failing to make public the standards he employs in deciding when to seek the death penalty. We affirm.

At approximately 7 p.m. on August 1, 1983, Martin entered Mr. and Mrs. Robert Tillman's home and shot them numerous times. The Tillmans were the parents of Martin's ex–fiancee, Kathy. During the weeks prior to the murders, Martin continually harassed Kathy both at home and at work. During the 2 days prior to the murders, Martin went to several local bars and taverns and inquired about procuring a handgun. He also stated Kathy's parents were responsible for their breakup, and he hated them, particularly Mrs. Tillman. On the day of the murders, he allegedly stated, "I want to shoot her parents. I'm going to kill them." The Tillmans' son saw Martin drive by their house several hours before the murders.

Martin was charged with premeditated first degree murder (RCW 9A.32.030(1)(a)) and three aggravating circumstances: common scheme or plan, multiple murder resulting from a single act, and first degree burglary (RCW 10.95-.020(8), (9)). Since Martin admitted the shooting, the only issues at trial were the degree of intent and the aggravating circumstances. Defense counsel argued Martin was only guilty of second degree murder because of diminished capacity due to alcoholism and personality disorders. The jury found premeditated first degree murder and first degree burglary on both counts. However,the jury could not agree on the death penalty and Martin was sentenced to life in prison without parole. RCW 10.95.030.

 Martin first contends the jury should have been instructed on the crime he intended to commit during the first degree burglary. *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983) (consolidated with *State v. MacReady, State v. Stewart* and *State v. Kilpatrick*), held that in a burglary prosecution, the crime or crimes the defendant allegedly intended to commit must be specified in the instructions. The failure to do so violates the due process requirement that the jury instructions must define every element of the offense charged, and therefore may be raised for the first time on appeal. *State v. Johnson, supra* at 623.[1]

However, regarding the consolidated cases of *State v. Stewart* and *State v. Kilpatrick, Johnson* held the error to be harmless:

> Stewart and his codefendants apparently conceded that the men who unlawfully entered the store intended to and did commit the crime of theft. Their defense was simply that they were not those men. In such circumstances, the failure to specify and define the crime or crimes intended could not have contributed to the verdict. *Cf. Connecticut v. Johnson,* [460 U.S. 73], 74 L. Ed. 2d 823, 103 S. Ct. 969, 978 (1983) (erroneous instruction on presumption of intent may be harmless where defense is alibi defense). The error was therefore harmless under either harmless error test.
>
> The effect of the error in Kilpatrick is perhaps slightly less clear but there is nonetheless sufficiently overwhelming evidence of his guilt. Applying the contribution harmless error test as well, we are also convinced beyond a reasonable doubt that it did not contribute to the verdict. Failure to specify and define the underlying crime in a burglary prosecution can affect the verdict only if the jury concludes there was some borderline conduct intended which it believes is, but which is actually not, a crime. In the circumstances of this case, we see no such possibility. We think it clear beyond a reasonable doubt that no jury which believed Kilpatrick's story that he was

---

[1] Any claimed error regarding the information has been waived by Martin's failure to request a bill of particulars. *State v. Johnson, supra.*

simply meeting someone to sell his scrap gold could have believed his conduct to include an "intent to commit a crime against a person or property therein". We also think it clear beyond a reasonable doubt that there is not here any borderline intent which the jury might have found to exist. The only plausible alternatives were to believe Kilpatrick's story or to believe that he intended to, and did, steal the scrap gold. Of these, the jury chose the latter and no specification and definition of the crime or crimes allegedly intended would have changed its verdict.

*State v. Johnson, supra* at 627.

Here, Martin's defense was diminished capacity. With its finding of first degree murder, the jury found Martin had a premeditated intent to kill the Tillmans. They chose to believe the circumstantial evidence over Martin's testimony. The only possible "borderline conduct" would involve Martin's intent regarding Kathy's engagement ring. He explained he went to the Tillmans to take back the ring so he could give it to his mother as a memento of him after he killed himself. The State then argued robbery or theft could be the underlying crime for burglary. Martin appears to argue a good faith claim of title. RCW 9A.56.020(2). However, he did not propose a jury instruction on this issue. Furthermore, his intent regarding the ring is superfluous in light of the jury's finding of premeditated intent to kill. It was undisputed, and there is overwhelming evidence that: Martin entered or remained unlawfully in the Tillmans' house, armed with a deadly weapon, with intent to assault, if not kill, these victims.[2] The elements of first degree burglary are thus met. RCW 9A.52.020. Likewise, the failure to instruct on the underlying crime intended could not have contributed to the verdict. Any error was harmless.

▋ The State argues *Johnson* (a burglary case) is inapplicable because here first degree burglary went only to

---

[2]Kathy was not home and her brother and grandmother remained in the house unharmed when the murders occurred.

enhancement of the penalty, not the first degree murder finding. The State is in error. While the statutory aggravating circumstances go to enhancement only, and are not elements of the underlying crime as such, they still must be proved beyond a reasonable doubt. *State v. Kincaid,* 103 Wn.2d 304, 692 P.2d 823 (1985). *Johnson* applies.

■ Martin next contends the court erred in excluding a juror who indicated he could not impose the death penalty. Martin has a Sixth Amendment right to be tried by a fair cross section of the community. Thus, otherwise qualified veniremen may only be excused for cause if they make it

> unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

*State v. Rupe,* 101 Wn.2d 664, 695, 683 P.2d 571 (1984) (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 522 n.21, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968)).

Our review of the voir dire indicates the court correctly concluded the venireman would not impose the death penalty upon Martin no matter what evidence was presented. *See State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979) (challenge for cause reviewed only for manifest abuse of discretion). The venireman repeatedly stated he did not think he could impose the death penalty on one so young because he had children that age, and he would have to vote for life imprisonment. Martin argues the questioning regarding the death penalty as applied to this case was improper, but that is clearly part of the *Witherspoon* test.

■ Martin argues that even if the court complied with *Witherspoon* and *Rupe,* selection of a "death–qualified" jury resulted in a "conviction–prone" jury in violation of the Sixth Amendment. *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir. 1985). He concedes the Eighth Circuit's position is contrary to that of other federal courts. *McCleskey v.*

*Kemp,* 753 F.2d 877 (11th Cir. 1985); *Keeten v. Garrison,* 742 F.2d 129 (4th Cir. 1984); *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 59 L. Ed. 2d 796, 99 S. Ct. 1548 (1979). Martin's contention fails for two reasons. First, unlike the petitioner in *Grigsby,* Martin has presented no evidence Washington death-qualified juries are biased on the issue of guilt or innocence. *State v. Bartholomew,* 98 Wn.2d 173, 209–12, 654 P.2d 1170 (1982), *vacated on other grounds,* 463 U.S. 1203, 77 L. Ed. 2d 1383, 103 S. Ct. 3530, *defendant's cert. denied,* 463 U.S. 1212, 77 L. Ed. 2d 1395, 103 S. Ct. 3548 (1983), *reaffirmed on remand,* 101 Wn.2d 631, 683 P.2d 1079 (1984); *State v. Gladstone,* 29 Wn. App. 426, 427–28, 628 P.2d 849, *review denied,* 96 Wn.2d 1024 (1981). Second, *State v. Peyton,* 29 Wn. App. 701, 707–10, 630 P.2d 1362, *review denied,* 96 Wn.2d 1024 (1981) extensively analyzed the issue and held Washington death-qualified juries are not unconstitutionally conviction prone. *Accord, State v. Rupe, supra* at 696–97; *State v. Flowers,* 30 Wn. App. 718, 725, 637 P.2d 1009 (1981), *review denied,* 97 Wn.2d 1024 (1982).

The court properly excused the venireman. Nor did the court err in permitting the State to exercise three of its peremptory challenges to exclude prospective jurors who were allegedly overheard to say they were automatically opposed to the death penalty.

Martin next contends prosecutorial misconduct in closing argument requires a new trial. He points to the State's rebuttal, wherein the prosecutor argued intent to take the ring could be the basis for first degree burglary, gave his personal opinion regarding common scheme or plan and impugned Martin's and Dr. Wetzler's credibility.

██ A prosecutor's statement of personal opinion in closing argument is a violation of CPR DR 7–106(C)(4). Even if the comments are found to be improper, however, reversal is required only if there is a substantial likelihood the comments affected the jury's decision. *State v. Reed,* 102 Wn.2d 140, 684 P.2d 699 (1984). Furthermore, reversal is not required if the error could have been obviated by a

curative instruction which was not requested. *State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 59, *review denied,* 100 Wn.2d 1003 (1983); *State v. Brown,* 29 Wn. App. 770, 630 P.2d 1378, *review denied,* 96 Wn.2d 1013 (1981). Assuming arguendo the prosecutor made improper comments about the ring and common scheme or plan, our review of the record does not indicate any substantial likelihood the remarks affected the jury's decision.

The prosecutor's remarks impugning Martin's and Dr. Wetzler's credibility were improper.[3] However, as in *Papadopoulos,* any prejudice was mitigated by the court's instruction (given three times) that counsels' arguments were not evidence, and could have been obviated by a curative instruction which was never requested. *See also United States v. Morris,* 568 F.2d 396 (5th Cir. 1978) (prosecutorial misconduct held harmless error); *Harris v. United States,* 402 F.2d 656 (D.C. Cir. 1968) (although prosecutor free to strike hard blows at witness credibility, may not term testimony "lie" or "fabrication"; nevertheless, error was harmless).

Furthermore, there does not appear to be a substantial likelihood the prosecutor's remarks affected the jury's decision, given the testimony of several witnesses that Martin was looking for a gun, that he hated Kathy's parents, and the details of the actual shooting, including the fact Martin paused to reload his gun before departing from the residence, yet left Kathy's brother and grandmother there unharmed. *See State v. Sargent,* 40 Wn. App. 340, 698 P.2d 598 (1985).

Lastly, Mr. Martin contends the lack of adopted and published guidelines by the prosecuting attorney's office concerning when aggravated first degree murder will be

---

[3]The State claims that since its argument was qualified by "the evidence shows" language, there was no impropriety. But the Sixth Circuit Court of Appeals has held the phrase "based on the evidence presented to you" will not diminish the egregious error of arguing the United States Attorney would not have sought an indictment if defendant were not guilty. *United States v. Bess,* 593 F.2d 749 (6th Cir. 1979).

charged is a violation per se of due process. He cites the public disclosure act, which provides in part "each local agency shall prominently display and make available for inspection . . . Rules of procedure;" RCW 42.17.250(1)(c). The statute is raised for the first time on appeal and therefore need not be considered but for the fact Martin claims a "per se violation" of due process. RAP 2.5(a). However, Martin cites no authority to support his "per se" argument. This court need not consider a claimed error where no argument is made beyond an assertion of a conclusion. *Hockley v. Hargitt*, 82 Wn.2d 337, 510 P.2d 1123 (1973).[4]

■ Nevertheless, we hold a county prosecutor is not required to publish any guidelines regarding when aggravated murder will be charged. The charging decision is necessarily made on a case–by–case basis, guided by RCW 10.95 and the Code of Professional Responsibility. *See* CPR DR 7–103(A), CPR EC 7–13. *Accord, State v. Dictado*, 102 Wn.2d 277, 687 P.2d 172 (1984) (RCW 10.95 limits prosecutorial discretion based on availability of the evidence in each case and does not violate equal protection); *State v. Rupe, supra* (death penalty does not violate due process or

---

[4]Martin does not assert he requested the Spokane County prosecutor to make any standards available, nor did he apparently bring an action to enforce RCW 42.17.250, as provided by RCW 42.17.340. Nor does he assert the prosecutor actually abused his discretion or failed to exercise it in this case, or that RCW 10.95 contains inadequate standards by which to exercise discretion. *See State v. Campbell*, 103 Wn.2d 1, 691 P.2d 929 (1984) (Utter, J., dissenting on the ground the death penalty statute contains no standards to guide prosecutors' exercise of discretion in charging aggravated murder), *cert. denied,* __ U.S. __, 85 L. Ed. 2d 526, 105 S. Ct. 2169 (1985); *State v. Pettitt*, 93 Wn.2d 288, 609 P.2d 1364 (1980) (prosecutorial discretion abused where standards require habitual criminal charge if certain fixed criteria are met without consideration of circumstances of individual case); *State v. Rowe*, 93 Wn.2d 277, 609 P.2d 1348 (1980) (prosecutorial discretion to bring habitual criminal charge does not violate due process or equal protection; statute valid).

After oral argument, Martin's counsel furnished us with a copy of guidelines "published" by the King County prosecutor's office. We note the guidelines do nothing more than reiterate officer procedures, which require the decision to charge aggravated murder be made by the prosecuting attorney or chief deputy. The actual decisionmaking process by the prosecuting attorney or chief deputy is not revealed.

cruel punishment clauses of state constitution; grant of prosecutorial discretion is valid). The only additional matters that the prosecutor could publish would reveal the deliberative process; such matters are exempt from the public disclosure act. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978).

The judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Review denied by Supreme Court September 20, 1985.